IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **RANDAL QURAN REID,** ) | |
| ) | |
| Plaintiff, ) | **CIVIL ACTION FILE NO:** |
| ) | **1:23-CV-04035-JPB** |
| v. ) | |
| ) | |
| **ANDREW BARTHOLOMEW**, in his ) | |
| Individual Capacity as a Deputy of the ) | |
| Jefferson Parish Sheriff's Office, and ) | |
| **JOSEPH P. LOPINTO III**, in his ) | |
| Individual and Official Capacity ) | |
| as Sheriff of the Jefferson Parish ) | |
| Sheriff's Office, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) FOR LACK OF PERSONAL JURISDICTION

**NOW COMES** Plaintiff, RANDAL QURAN REID, and hereby files his response to *Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 (b)(2) for Lack of Personal Jurisdiction*, and show the Court as follows:

## I.    INTRODUCTION

This is a civil rights lawsuit filed by MR. RIED seeking general and compensatory damages for his wrongful arrest and imprisonment, in violation of his rights guaranteed by the Fourth Amendment. He was arrested and held without bond for six (6) days based on a criminal arrest warrant that falsely identified him as a

suspect for the felony crimes of bank fraud and identity theft. His arrest and incarceration resulted from the Jefferson Parish Sheriff's Office's (JPSO) misuse and reliance on facial recognition technology that incorrectly identified him as a suspect in the theft of high-end purses from a consignment store in Metairie, Louisiana. [Doc. #1, § 1].

While facial recognition can be a legitimate investigative tool for law enforcement, an identification based solely on facial recognition technology does not provide probable cause for an arrest. *Id.* at § 3. Responsible law enforcement agencies that use and rely on facial recognition technology have policies and procedures that define and limit the use of this technology, including safeguards and protocols relating to an officer's request to use facial recognition technology, and analysis of facial recognition submissions. *Id.*

At all times relevant to this lawsuit, Defendant JOSPEPH P. LOPINTO III, was the Sheriff and final policymaker of the Jefferson Parish Sheriff's Office. In his role as Sheriff, Defendant LOPINTO allowed his officers, including Defendant ANDREW BARTHOLOMEW, to use and rely on identifications obtained from facial recognition technology in support of criminal arrest warrants, without providing adequate guidelines and training to his officers on the necessity of conducting further investigation to support a positive identification of a suspect based on facial recognition technology. *Id.* at § 86.

2

Mr. REID is a resident of Georgia and has never been to Louisiana. He was arrested in Dekalb County, Georgia, based on the unconstitutional actions of the Jefferson Parish Sheriff's Office, under the management of Defendant LOPINTO, and one of his deputies, Defendant BARTHOLOMEW. These Defendants wrongfully secured a warrant for MR. REID'S arrest and extradition based on false and misleading information submitted to a magistrate, which failed to reveal that facial recognition technology was the only source of MR. REID'S identification.

Based on information and belief, the facial recognition software used by the Jefferson Parish Defendants was designed and manufactured by Clearview AI, Inc., a New York based company. The guidelines provided by Clearview AI for use of its technology specifically warns users that "search results established through CV and its related systems and technologies are indicative and not definitive" and that "CV is neither designed nor intended to be used as a single-source system for establishing the identity of an individual." *Id.* at § 5.

Defendant BARTHOLOMEW knowingly and recklessly misrepresented and omitted information from his criminal arrest warrant affidavit that was material to the magistrate's decision to issue an arrest warrant for MR. REID. *Id.* at § 2. Under Louisiana and federal law, Defendant LOPINTO is and was the final policymaker for JPSO in the areas of law enforcement and the employment, training, and supervision of JPSO officers. *Id.* at § 17. Defendant LOPINTO, as Sheriff of JPSO,

is responsible for ensuring that JPSO deputies complied with the color and pretense of federal and state laws, as well as the ordinances, regulations, customs, usages of the State of Louisiana and Jefferson Parish, and the policies of JPSO. *Id.* at § 18.

## II.    PROCEDURAL HISTORY

On **September 8, 2023**, MR. REID filed in the United States District Court for the Northern District of Georgia his *Complaint for Damages* alleging that he was falsely arrested and imprisoned in the Dekalb County, Georgia Jail, because of a Louisiana warrant and extradition order obtained with Defendants' false statements, misrepresentations, and concealments. [Doc. #1].

### A. Service of Summons and Complaint on Defendant Lopinto

On **September 14, 2023**, a copy of the *Complaint for Damages* and summons were served by Darren J. Harper, a private process server, upon the Jefferson Parish Sheriff's Office judicial supervisor, who is designated by law to accept service of process on behalf of Defendant LOPINTO, at his primary place of business located at 1233 Westbank Expressway, Harvey, Louisiana 70058. [Doc. # 5]. Pursuant to Fed. R. Civ. P. 12(a)(1), Defendant LOPINTO'S answer was due "within 21 days after being served with the summons and complaint," making his answer due no later than **October 5, 2023**.

### B. Service of Summons and Complaint on Defendant Bartholomew

On **September 20, 2023**, a copy of the *Complaint for Damages* and summons

were served by Darren J. Harper, a private process server, upon Defendant BARTHOLOMEW, at his residence located at 3205 Decomine Drive, Chalmette, Louisiana 70043. [Doc. # 7]. Pursuant to Fed. R. Civ. P. 12(a)(1), Defendant BARTHOLOMEW'S answer was due "within 21 days after being served with the summons and complaint," making his answer due no later than **October 11, 2023**.

## III. ARGUMENT

### A. Defendants' Motion to Dismiss is Untimely.

On **October 17, 2023**, Defendants filed a *Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) for Lack of Personal Jurisdiction*. [Doc. # 8]. While a defendant making a motion to dismiss must do so before filing an answer or other responsive pleading, the motion is due when the defendant's answer would have been due. See *Monfort v. CKCG Health Care Servs.*, No. 1:19-cv-00354-MLB-RGV, 2020 U.S. Dist. LEXIS 254554, *15-16 (N.D. Ga. 2020).

As shown above, Defendant BARTHOLOMEW was required to file his answer or responsive pleading to Plaintiff's summons and complaint by **October 11, 2023**, and Defendant LOPINTO by **October 5, 2023**. Neither Defendant requested nor obtained prior permission of the Court to file their motion to dismiss on **October 17, 2023**, after the applicable deadline. Accordingly, Defendants' motion to dismiss should be denied as untimely.

**B.** <u>Legal Standard for Rule 12(b)(2) Motion to Dismiss</u>.

The standard for granting a motion to dismiss requires this Court to "accept all factual allegations in the complaint as true" and to "evaluate the inferences derived from the facts in the light most favorable to the plaintiff." <u>See</u> *New Lenox Indus. v. Fenton*, 510 F. Supp. 2d 893, \*6 (M.D. Fla. 2007); <u>and</u> *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). In ruling on a motion to dismiss based on personal jurisdiction, the plaintiff has the burden of "initially establishing a prima facia case of personal jurisdiction over a non-resident defendant" and the court must accept the facts alleged by the plaintiff as true and must construe the pleadings and supporting documents in favor of the plaintiff. *Fenton*, 510 F. Supp. at \*7-8.

The standard for evaluating the merits of a Rule 12(b)(2) motion were explained in *Wallack v. Worldwide Mach. Sales, Inc.*, as follows:

> The plaintiff is required to plead sufficient material facts to form a basis for in personam jurisdiction. Once the plaintiff meets this burden, the burden shifts to the defendant to challenge the plaintiff's complaint by affidavits or other pleading. The court must accept the facts alleged in the complaint as true to the extent they are uncontroverted by the defendant's affidavits. If the defendant sufficiently challenges the plaintiff's jurisdictional allegations, the plaintiff must affirmatively support his jurisdictional allegations set forth in the complaint.

278 F. Supp. 2d 1358, 1364 (M.D. Fla. 2003), <u>citing</u> *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).

In this case, the burden does not shift back to the Plaintiff when Defendants have presented in their motion to dismiss nothing more than conclusory assertions that they are not subject to the personal jurisdiction of this Court. See *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).

### C. Plaintiff's Prima Facia Case of Personal Jurisdiction.

Defendants have presented no evidence or affidavits to rebut Plaintiff's allegations of a prima facia case supporting personal jurisdiction over Defendants. Specifically, Plaintiff's *Complaint for Damages* alleges the following regarding the basis for in personam jurisdiction over Defendants.

> *This court has "specific" personal jurisdiction over Defendants because their actions are intentional torts that caused MR. REID'S arrest and incarceration in the DeKalb County jail, giving rise to his cause of action for the violation of his state and federal statutory and constitutional rights.*

> *As shown herein, by executing a criminal arrest warrant for MR. REID, with a requirement that he be detained for extradition to Louisiana, Defendants purposefully availed themselves of the privilege of conducting activities within the state of Georgia, and within the jurisdiction of the United States District Court for the Northern District of Georgia.*

> *The actions of Defendants, as shown herein, are such that they should reasonably anticipate being haled into court in this jurisdiction to answer for their actions directed towards MR. REID, a Georgia resident. Moreover, allowing this case to proceed against Defendants in this jurisdiction does not offend traditional notions of fair play and substantial justice.*

[Doc. #1, §§ 10-11]. (emphasis added).

Plaintiff's complaint specifically addresses the factual basis for this Court to exercise personal jurisdiction over Defendant LOPINTO, in his individual and official capacity, derived from his role and responsibilities as Sheriff of the Jefferson Parish Sheriff's Office.[1]

> Defendant, JOSEPH P. LOPINTO III (hereinafter "Defendant LOPINTO") is, and at all relevant times, was the Sheriff of the Jefferson Parish Sheriff's Office (herein sometimes referred to as "JPSO"), with supervisory and managerial authority over all Jefferson Parish Sheriff's Office deputies. Under Louisiana law, the definition of a political subdivision includes a "sheriff." See La. Rev. Stat. § 13:5102(B). As such, Defendant LOPINTO may be sued in his official capacity as Sheriff of JPSO, as the chief law enforcement officer of Jefferson Parish who is authorized to perform governmental functions as a unit of local government.

> In his role as Sheriff, Defendant LOPINTO was ultimately responsible for the hiring, training, supervision, discipline, administration, policies, customs, practices, operations, management, and control of the JPSO and its officers, including Defendant BARTHOLOMEW. Under Louisiana and federal law, Defendant LOPINTO is and was the final policymaker for JPSO in the areas of law enforcement and the employment and training, and supervision of JPSO officers. As such, Defendant LOPINTO can be held liable in his individual and official capacity for his actions as final policymaker over JPSO, including Defendant BARTHOLOMEW.

> As [S]heriff, Defendant LOPINTO is responsible for ensuring that JPSO deputies complied with the color and pretense of federal and state laws, as well as the ordinances, regulations, customs, usages of the State of Louisiana and Jefferson Parish, and the policies of JPSO.

---

[1] Plaintiff's complaint explains that under Louisiana law JPSO is not an entity capable of being sued, but Defendant LOPINTO, as the Sheriff of JPSO can be sued in his official capacity as the chief law enforcement officer for JPSO, who is responsible for training, supervision, administration, policies, customs, practices, operations, management, and control of JPSO and its officers, including Defendant BARTHOLOMEW. [Doc. #1, § 131].

> *In his role as [S]heriff, Defendant LOPINTO was ultimately responsible for the polices, practices, customs, and regulations of JPSO; for the hiring, training, supervision, and discipline of JPSO officers; and for promulgating all orders, rules, instructions, and standard operating procedures for citizen encounters with police officers acting in their official capacity.*

*Id.*, at §§ 16-19.

### D. Legal Standard for Determining Personal Jurisdiction.

As explained by the Eleventh Circuit in *Madara v. Hall*, "[t]he determination of personal jurisdiction over a nonresident defendant requires a two-part analysis." 916 F.2d 1510, 1514 (11th Cir. 1990) (citations omitted).

> First, we consider the jurisdictional question under the state long-arm statute.  If there is a basis for the assertion of personal jurisdiction under the state statute, we next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that maintenance of the suit does not offend traditional notions of fair play and substantial justice. Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a non-resident defendant.

*Id.* (quotations and citations omitted).

The Eleventh Circuit has also held that "[w]hen a federal court uses a state long-arm statute is governed by state law, the federal court is required to construe it as would the state's supreme court." *Diamond Crystal Brands, Inc. v. Food Movers Int'l*, 593 F.3d 1249 (11th Cir. 2010).  As such, this Court "must interpret and apply Georgia's long-arm statute in the same way as would the Georgia Supreme Court." *Id.* In *Diamond Crystal Brands, Inc.*, the Court explained the Due Process Clause

analysis in evaluating personal jurisdiction, as follows:

> The *Due Process Clause* protects an individual's liberty interest in not being subject to binding judgments imposed by foreign sovereigns. The heart of this protection is fair warning--the *Due Process Clause* requires that the defendant's conduct and connection with the forum State [be] such that he should reasonably anticipate being haled into court there. Therefore, states may exercise jurisdiction over only those who have established certain minimum contacts with [the forum] state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.

*Id.*, at *1267. (quotations and citations omitted).

In determining whether a state's exercise of personal jurisdiction over a nonresident defendant comports with traditional notions of fair play and substantial justice, the following factors are relevant: the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental social policies. See *Burger King Co. v. Rudzewick*, 471 U.S. 462, 476-477 (1985).

### E. Personal Jurisdiction Under Georgia's Long Arm Statute.

Georgia's long arm statute, O.C.G.A. § 9-10-91, provides that Georgia court's may exercise personal jurisdiction over a nonresident defendant "as if he or she were a resident of this state, if in person or through an agent" for any "cause of action arising from any of the acts, omissions, …" set forth within the statute, which

includes subpart (2): "Commits a tortious act or omissions within this state, …." Georgia courts have held that the jurisdictional reach of paragraph (2) of this statute is limited only by the ultimate constraints imposed by the due process clause. See *Thornton v. Toyota Motor Sales U.S.A., Inc.*, 397 F. Supp. 476, 481 (N.D. Ga. 1975).

Paragraph (2) of O.C.G.A. § 9-10-91 has been interpreted to confer jurisdiction where negligence occurred outside this state and the resulting damage occured inside this state. See *Spelsberg v. Sweeney*, 514 F. Supp. 622, 624 (S.D. Ga 1981). Similarly, this paragraph confers jurisdiction over a nonresident who purposefully conducts some activity in or with this state and because of that activity a Georgia resident suffers injury here even though the actual act or omission occurred outside the forum state. *Id., see also Stacy v. Hilton Head Seafood Co.*, 688 F. Supp. 599, 604 (S.D. Ga. 1988) ("In actions sounding in tort, Georgia's Long Arm statute will support the exercise of personal jurisdiction only if either the tortious act or the resulting injury occurred in Georgia.").

In *Coe v. Payne Co. v. Wood-Mosaic Corp.*, 230 Ga. 58, 59, 195 S.E.2d 399, 401 (1973), the Supreme Court of Georgia explained that paragraph (2) of O.C.G.A. § 9-10-91 confers jurisdiction where the negligence occurs outside of Georgia.

> We have reviewed all the cases that we can locate on this subject, and we conclude that sub-section (b) of our Long Arm Statute confers jurisdiction in the situation where the negligence occurred outside the State of Georgia and the damage resulting therefrom occurred inside the State of Georgia. We adopt the Illinois Rule.

In adopting the Illinois Rule, we are impressed by the protective policy for this state's citizens enunciated so well in the following quote from *Nelson v. Miller, 11 Ill. 2d 378, 384 (143 NE2d 673) (1957)*: "The foundations of jurisdiction include the interest that a State has in providing redress in its own courts against persons who inflict injuries upon, or otherwise incur obligations to, those within the ambit of the State's legitimate protective policy. The limits on the exercise of jurisdiction are not 'mechanical or quantitative' (*International Shoe Co. v. Washington*, 362 U.S. 310, 319 (1945), but are to be found only in the requirement that the provisions made for this purpose must be fair and reasonable in the circumstances, and must give to the defendant adequate notice of the claim against him, and an adequate and realistic opportunity to appear and be heard in his defense."

*Coe & Payne Co.*, 230 Ga. at 59.[2] (emphasis added).

Defendants' arguments in support of their motion to dismiss are based largely on an erroneous understanding and interpretation of O.C.G.A. § 9-10-91.[3] Plaintiffs are not proceeding under paragraph (1) or (3) of O.C.G.A. § 9-10-91, but paragraph (2). As explained in *Psychological Resources Support Sys. v. Gerleman*, 624 F. Supp. 483, 484-485 (N.D. Ga. 1985), minimum contacts may be present under paragraph (2) of O.C.G.A. § 9-10-91 and jurisdiction thereunder may be appropriate even when it could not be achieved under the more stringent statutory requirements of paragraph (3) of O.C.G.A. § 9-10-91.

When the claims sound in tort, jurisdiction must be premised upon subsections (2) or (3) of the long-arm statute, and the court seeking to exercise personal jurisdiction must satisfy three requirements:

---

[2] Subsection (2) of the current Georgia Long Arm Statute, O.C.G.A. § 9-10-91, was previously subsection (b) under the older version of the statute. *See Value Engineering Co. v. Gisell*, 140 Ga. App. 44, 46, 48, 230 S.E.2d 29 (1976).

[3] Defendants motion incorrectly argues that "only subsections (1) and (3) of the statute could arguably apply." [Doc #8, Page 8].

(1) The nonresident must purposefully avail himself of the privilege of doing some act or consummating some transaction with or in the forum. It is not necessary that the defendant or his agent be physically within the forum, for an act or transaction by mail may suffice. A single event may be a sufficient basis if its effects within the forum are substantial enough to qualify under Rule 3; (2) The plaintiff must have a legal cause of action against the nonresident, which arises out of, or results from, the activity or activities of the defendant within the forum; and (3) If (and only if) the requirements of Rules 1 and 2 are established, a 'minimum contact' between the nonresident and the forum exists; the assumption of jurisdiction must be found to be consonant with the due process notions of 'fair play' and 'substantial justice.' In other words, the exercise of jurisdiction based upon the minimum contact must be reasonable.

*Gerleman*, 624 F. Supp., at 485.   (quotations and citations omitted).   (emphasis added).

For tort actions against nonresident defendants, Georgia courts have held that O.C.G.A. § 9-10-91 does not have a "minimum contacts" requirement and thus a single tort committed in forum state is sufficient to satisfy the "minimum contacts" test vest jurisdiction in the state where the tort was committed. See *Marival, Inc. v. Planes, Inc.*, 302 F. Supp. 201, 206 (N.D. Ga. 1969) and *Newman v. Fleming*, 331 F. Supp. 973, 974 (S.D. Ga. 1971).

## F. Plaintiff's Complaint Alleges Tortious Actions and Omissions of Defendants Bartholomew and Lopinto.

Plaintiff's complaint alleges that Defendant BARTHOLOMEW, through his actions and omissions, knowingly, willfully, and recklessly misrepresented and concealed from his criminal arrest warrant affidavit information that was intended

to deceive the magistrate who ultimately signed a warrant for MR. REID'S arrest and extradition. [Doc. #1, §§ 109-110].   Further, the complaint alleges that Defendant BARTHOLOMEW deprived the magistrate of critical evidence that would have been considered in determining whether there was probable cause to arrest MR. REID, and therefore deprived MR. REID of his rights guaranteed by the Fourth Amendment. *Id.* at §§ 111-112.

 .Regarding Defendant LOPINTO, Plaintiff's claims are based on his actions and omissions as the Sheriff of JPSO, with management authority over the operations of JPSO, and supervisory authority over Defendant BARTHOLOMEW. [Doc. #1, Count III, §§ 125-147].  The complaint alleges, among other things, that Defendant LOPINTO was deliberately indifferent to the use of facial recognition technology by his officers, as shown by his failure to establish adequate policies governing the use of facial recognition; failing to train his officers regarding the limitations and proper use of facial recognition technology; and by exhibiting a custom of acquiescing to his officer's use and reliance on facial recognition technology. *Id.* at § 130.  The complaint also alleges that Defendant LOPINTO permitted, encouraged, tolerated, and knowingly acquiesced to JPSO officers, including Defendant BARTHOLOMEW, using, and relying on facial recognition technology as described herein.  *Id.* at § 142.  Further, the complaint alleges that Defendant LOPINTO condoned, approved, ratified, facilitated, and knowingly

acquiesced in the actions of his JPSO officers, including Defendant BARTHOLOMEW, misuse, and reliance on facial recognition technology. *Id.* at § 143.

### G. Georgia Extradition Process.

Under Georgia law, the arrest of MR. REID is governed by O.C.G.A. § 17-13-33, which allows for the arrest of a person charged with a crime in another state under warrant based upon oath or affidavit of another person. This statute requires that the arrest of MR. REID, or any citizen, be supported based on "the affidavit of any credible person in another state, that a crime has been committed in such state with the commission of the crime…" This statute also requires "a certified copy of the sworn complaint and affidavit upon which the warrant is issued shall be attached to the warrant." O.C.G.A. § 17-13-33.

Under Georgia law, the extradition of MR. REID, is governed by O.C.G.A. § 17-13-23, which requires documentation "that the accused was present in the demanding state at the time of the commission of the alleged crime and that thereafter he fled from the state." Specifically, this statute requires documentation in the form of "a copy of an indictment found, or by information supported by affidavit in the state having jurisdiction of the crime, or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant that was issued thereupon…" O.C.G.A. § 17-13-23.

The indictment, information, or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of the state; and the copy of the indictment, information, affidavit, judgment of conviction, or sentence must be authenticated by the executive authority making the demand.

O.C.G.A. § 17-13-23.

Here, Plaintiff's claims against Defendants are supported by documents attached to the complaint, including the criminal arrest warrant affidavit; notice provided to JPSO stating that MR. REID was wanted for the charge of larceny from Louisiana; and documentation from JPSO to DeKalb County Sheriff's Office stating, in part, as follows:

**\*\*\*\*NO BOND\*\*\* DO NOT RELEASE \*\*\* HOLD FOR JEFFERSON PARISH\*\*\*\*\*\***

**PLEASE PLACE A HOLD ON THE ABOVE SUBJECT FOR THIS DEPARTMENT, WE WILL EXTRADITE ON THIS MATTER. ADVISE WHEN THE SUBJECT SIGNS A WAIVER OF EXTRADITION OR IF HE REFUSES, WE WILL PROCEED TO A GOVERNOR'S WARRANT.**

[Doc. #1, § 40, referencing *Document from Jefferson Parish Sheriff's Office, Extradition/Fugitive Section*, attached to Plaintiff's complaint as Exhibit 7; and §§ 41-43]. (emphasis added).

It is clear under Georgia law, and from the record in this case, that but for the above-referenced documentation and communication between the Jefferson Parish Sheriff's Office and the DeKalb County Sheriff's Office that MR. REID would not

have been arrested, detained, and scheduled for extradition to Louisiana.  It is also clear that but for the recall of the arrest warrant by the Jefferson Parish Sheriff's Office that MR. REID would have been picked up from the DeKalb County jail and extradited to Louisiana.

### H. Personal Jurisdiction Under Due Process Standard

Where a plaintiff's allegations establish personal jurisdiction over a nonresident defendant, a court must next examine whether exercising personal jurisdiction over the defendant comports with federal due process considerations, which have been explained, as follows:

> A plaintiff properly alleges minimum contacts where he shows that the defendant caused actions to occur in the forum state that creates a substantial connection with the forum state. Due process further requires that a non-resident defendant have fair warning that a particular activity may subject him to the jurisdiction through his own purposefully directed activities at or in the forum.  The litigation must also arise out of or relate to those activities.
>
> In considering whether a non-resident defendant has sufficient contacts with a forum state to confer personal jurisdiction, the court considers the following factors: (1) the burden on the defendant in defending the lawsuit; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies.

*Wallack v. Worldwide Mach. Sales*, 278 F. Supp. 2d 1358, 1367-1368 (M.D. Fla. 2003) (citations and quotations omitted) (quoting from *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 477 (1985) and *Keeton v. Hustler Magazine, Inc.*,

465 U.S. 770 (1984).

Considering traditional notions of fair play and substantial justice, it is fair and consistent with Due Process for this Court to exercise personal jurisdiction over Defendants. Here, Defendants knew or should have known when they initiated criminal charges against MR. REID that he was a Georgia resident, that he would likely be arrested in Georgia, and that JPSO intended to extradite and transport MR. REID from Georgia to Louisiana. Therefore, Georgia's interest in adjudicating this case is substantial, due to MR. REID being a Georgia resident, who was arrested and detained in Georgia, and presented before a Georgia court regarding his extradition. Likewise, for the reasons stated above, MR. REID'S interest in obtaining convenient and effective relief in this case is best served by litigating this case in Georgia. Furthermore, the use of facial recognition technology by JPSO to obtain an arrest warrant for a Georgia citizen has significant and substantive social and legal policy implications.

## 1. Defendants' Reliance on Non-Binding, Non-Persuasive and Factually Distinguishable Cases from Other Jurisdictions.

In *Louis Vuitton v. Malletier*, 736 F.3d 1339 (11th Cir. 2013), the Eleventh Circuit determined that the exercise of personal jurisdiction against a defendant comported with due process, where the "claims arose from the defendant's contacts with the state," the defendant "purposefully availed himself of the privilege of conducting activities in the state" and "the exercise of personal jurisdiction

comported with fair play and substantial justice." Similarly, MR. REID'S allegations against Defendants allege a direct causal relationship between the defendant, the forum, and the litigation, which is "the essential foundation of <u>in personum</u> jurisdiction…." *Louis Vuitton*, 736 F.2d at 1335 (quoting *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408 (1984).

In *Louis Vuitton v. Malletier*, the Court explained that there "are two applicable tests for determining whether purposeful availment occurred." *Id.* at 1356. Under the so called "effects" test articulated in *Calder v. Jones*, 465 U.S. 783 (1984), "a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the form state." *Louis Vuitton*, 736 F.2d at 1356. The second test is based on a "traditional purposeful availment" analysis where the court assesses the following in determining personal jurisdiction:  (1) whether the non-resident defendant's contacts with the forum state relate to the plaintiff's cause of action; (2) whether there is some action by defendant purposely availing himself of the privileges within the forum state; and (3) whether defendant's contacts with the forum state are such that the defendant should reasonably anticipate being haled into court in the forum state. *Id.* at 1357.

Regardless of whether this Court applies the "effects test" or the "traditional purposeful availment" standard in assessing MR. REID'S claims, the outcome is the

same – personal jurisdiction against Defendants is appropriate and constitutional based on the claims and factual allegations made by MR. REID in this lawsuit.  As shown herein, MR. REID alleges specific and deliberate misconduct on the part of Defendants that was the direct cause of his arrest, detention, and waiver of extradition. Moreover, but for Defendants recall of MR. REID'S arrest warrant, he would have been picked up from Georgia by JPSO and transported to Louisiana to face felony charges bank fraud and theft charges.

Defendants rely on a litany of cases from other federal district courts, none of which are binding, persuasive, or factually relevant to the specific allegations in this lawsuit and the question of whether this Court can appropriately exercise personal jurisdiction over Defendants.  While these cases relate to arrest warrants, none of them involve allegations of misconduct against officers who intentionally, deliberately, and recklessly obtained an arrest warrant against a suspect, as alleged by MR. REID.

In *Brown v. Bob Tyler Suzuki, Inc.*, 2012 U.S. Dist. LEXIS 11726 (S.D. Miss. Jan. 31, 2012), the court noted that "the effects of an alleged intentional tort are to be assessed as part of the analysis of the defendant's relevant contacts." *Id.* at *8. In *Brown*, the court determined that defendant officers did not have sufficient contacts to allow suit against them in Mississippi, where the plaintiff was arrested in Mississippi for an arrest warrant initiated by defendants in Florida.  However, unlike

the facts alleged by MR. REID regarding the intentional and deliberate indifference and recklessness of the conduct of Defendants, in *Brown*, the plaintiff alleged that individuals other than the defendant officers "made false accusations that he had stolen the vehicle" which the court deemed as "attenuated" to support personal jurisdiction over the defendant officers. *Id.* at **3, 7. In *Brown*, the court determined that the defendant officers contacts with Mississippi "arose from fortuitous circumstances" which would not be a fair characterization of the circumstances leading to MR. REID's wrongful arrest and detention and near extradition to Louisiana. *Id.* at *11.

Defendants also rely on *Williams v. Ponder*, 2009 U.S. Dist. LEXIS 91615 (E.D. PA. NOV. 3, 2008), where a district court ruled that it had no personal jurisdiction over defendant police officers for "the mere issuance of an arrest warrant that foreseeably" caused plaintiff's arrest. Id. at *11. Again, unlike the plaintiff in *Williams*, MR. REID has presented sufficient facts, documents, and arguments in response to Defendants' motion to dismiss which demonstrate that his claims and allegations against Defendants are based on far more than the "mere issuance" of a warrant for his arrest. Furthermore, the plaintiff in *Williams* was pro se and failed to respond to the defendant officers' motion to dismiss. *Id.* at *7-8.

In *Bush v. Adams*, 2008 U.S. Dist. LEXIS 101649 (E.D. PA. Nov. 3, 2008), the court refused to exercise personal jurisdiction over police officers in Virginia

relating to the arrest of plaintiff in Pennsylvania, where the police officers submitted affidavits in support of their motion to dismiss, and where the officers initiated an arrest warrant for defendant acting on information provided by plaintiff's ex-wife. In *Bush*, the plaintiff's alleged that his ex-wife knowingly provided false information to the officers that he "physically and emotionally harmed her and her children" and that plaintiff had "no legal right to custody." *Id.* at *8. *Bush*, like the others cases referenced above, is clearly distinguishable from the factual allegations underlying MR. REID'S claims.  Furthermore, MR. REID does not base his claims against Defendants on "foreseeability" alone, but instead because Defendants "conduct and connection with the forum State are such that [Defendants] should reasonably anticipate being haled into court there." *World-Wide Volkswagon Corp. Woodson*, 444 U.S. 286, 296 (1980).

In *Olagues v. Stafford*, 316 F. Supp. 2d 393 (E.D. La. 2004), the court noted that "even an act done outside the forum state with consequences inside the state will suffice as a basis for specific personal jurisdiction if that act's effects were 'intended or highly likely to follow from the nonresident defendant's conduct." *Id.* at 400, citing *Guidry v. U.S. Tobacco*, 188 F.3d 619 (5th Cir. 1999), and *Calder v. Jones*, 465 U.S. 783 (1984).  While the plaintiff alleged that defendant officers and his wife collaborated to arrest him and seize his children without legal justification, the court determined that plaintiff "neglected to demonstrate that any defendant acted in a

manner that indicated an intention to cause plaintiff tortious injury." *Id*. at 400. Further, the court determined that any injury the plaintiff suffered because of his arrest "resulted from his own unlawful taking of the Children from California in violation of numerous court orders." *Id*. The facts and circumstances surrounding the arrest warrant in *Olagues* are easily and clearly distinguishable from MR. REID'S claims against Defendants and the police officer misconduct he alleges caused his unlawful arrest and detention.

## III.   **CONCLUSION**

Plaintiff has shown herein, and in his *Complaint for Damages*, that there is a sufficient factual and legal basis for this Court to exercise personal jurisdiction over Defendants based on allegations they have committed a tortious act within the scope and meaning of O.C.G.A. § 9-10-91(2), and consistent with the Due Process Clause of the Fourteenth Amendment.  Plaintiff has also shown that Defendants motion to dismiss was untimely filed without prior permission from the Court and should therefore be dismissed.[4]

**WHEREFORE**, Plaintiff requests the following relief from the Court:

1.  Defendants' motion to dismiss be denied as untimely, or alternatively;

2.  Defendants' motion to dismiss be denied on the merits, or alternatively;

---

[4] Because Defendants failed to timely file either an answer or its motion to dismiss within 21 days of being served with the summons and complaint, Plaintiff has moved in a separate pleading for a judgment of default against Defendants.

3. If the Court grants Defendants' motion to dismiss regarding either Defendant BARTHOLOMEW, or Defendant LOPINTO, in his individual and personal capacity, Plaintiff request the Court to exercise its discretion pursuant to 28 U.S.C. § 1404(a), and for the convenience of the parties transfer this civil action "to any other district or division where it might have been brought.

This 31st day of October, 2023.

The Cochran Firm – Atlanta

/s/ Sam L. Starks
Shean D. Williams, Esq.
Georgia Bar No. 764139
Gary B. Andrews, Esq.
Georgia Bar No. 019299
Sam L. Starks, Esq.
Georgia Bar No. 676515
100 Peachtree Street, NW, Suite 2600
Atlanta, Georgia 30303
Tel: (404) 222-9922
Fax: (404) 222-0170

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rules 5.1(B) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font and size requirements and is formatted in Times New Roman, 14 point font.

## CERTIFICATE OF SERVICE

This is to certify that on October 31, 2023, I electronically filed **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) FOR LACK OF PERSONAL JURISDICTION** with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

> Thomas E. Lavender III
> Lavender Hoffman, LLC
> 945 East Paces Ferry Road, NE
> Suite 2000
> Atlanta, Georgia 30326
> ted.lavender@lhalawyers.com

This 31st day of October, 2023.

The Cochran Firm – Atlanta

/s/ Sam L. Starks
Sam L. Starks, Esq.
100 Peachtree Street, NW, Suite 2600
Atlanta, Georgia 30303
Tel: (404) 222-9922